# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ZEN DESIGN GROUP LIMITED,

    Plaintiff,

v.

                              Case No. 16-12936

SCHOLASTIC, INC.,

    Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

Plaintiff Zen Design Group Limited ("Zen Design") has accused Defendant Scholastic Inc. ("Scholastic") of willfully infringing on U.S. Patent No. 6,860,616 ("the '616 Patent"). Defendant has indicated its intention to rely on an opinion of counsel as a defense to willfulness. Plaintiff contends that Defendant's assertion of this defense waives Defendant's attorney-client privilege with respect to certain documents. Plaintiff seeks disclosure of those documents, but Defendant disagrees with Plaintiff's assessment and has refused to disclose the pertinent documents. Consequently, Plaintiff filed the present Motion to Compel. (Dkt. # 45.) Defendant filed a response (Dkt. # 47) and Plaintiff filed a reply (Dkt. # 49). Having reviewed the parties' thorough briefing, the court concludes a hearing is unnecessary, E.D. Mich. L. R. 7.1(f)(2), and will grant Plaintiff's motion.

## I. BACKGROUND

Plaintiff is the owner of the '616 Patent entitled "Ultraviolet Light Writing System." The patent purports to describe a pen capable of writing with a type of ink invisible under normal conditions, but with a tendency to fluoresce when exposed to ultraviolet

light. To this end, the pen also includes a bulb that emits light of the requisite wavelengths to reveal the writing otherwise not visible.

In September 2009, Plaintiff informed Defendant of the '616 Patent and accused one of Defendant's subsidiaries of producing and selling an infringing device ("Accused Device #1"). In June 2010, Defendant sought advice from attorney Brian Siff regarding Plaintiff's enforcement of the '616 Patent and Accused Device #1.

In August 2011, the parties reached a settlement agreement addressing past sales and current inventory of Accused Device #1, but the agreement did not provide a license for any future sales because Defendant intended to discontinue production of Accused Device #1. Throughout the June 2010–August 2011 period, Siff served as outside counsel to Defendant and provided legal advice regarding the parties' disputes and negotiations.

Thereafter, Defendant began selling a product allegedly very similar to Accused Device #1. Plaintiff alleges that Defendant had plans to sell this device ("Accused Device #2") at the time of the 2011 settlement and concealed these plans from Plaintiff. (Dkt. # 45, Pg. ID 994.) Defendant contends that no one involved in the 2011 settlement was aware of Accused Device #2. (Dkt. # 47, Pg. ID 1269.)

In May 2015, Plaintiff informed Defendant that it believed Accused Device #2 infringed on its '616 Patent. Defendant again retained Siff as outside counsel to represent it in discussions with Plaintiff. In September 2015, Defendant retained attorney Scott Stimpson to provide an independent opinion of counsel on whether Accused Device #2 infringed on the '616 Patent.

In October 2015, Stimpson provided an opinion concluding that Accused Device #2 did not infringe on the '616 Patent and therefore, Defendant could continue to sell the device in good faith.

In August 2016, Plaintiff filed the present suit. (Dkt. # 1, 6.) Through Siff as counsel, Defendant filed an answer to the complaint as well as counterclaims requesting a declaration of non-infringement and invalidity of the '616 Patent. (Dkt. # 9.) Plaintiff's complaint alleges that Defendant has willfully infringed on the '616 Patent since May 2015—when Plaintiff first made Defendant aware of its infringement allegations concerning Accused Device #2.

In June 2017, Defendant indicated its intention to rely on an opinion of counsel to rebut Plaintiff's allegation of willfulness. To this end, Defendant submitted Stimpson's opinion as well as all documents and communications concerning his opinion.

Plaintiff, however, sought further discovery and requested

> all communications, written or verbal, between Scholastic and any of its counsel, including both in-house and outside counsel, that concern: a) the scope and/or meaning of any claims of the Asserted Patent and b) the infringement of the Asserted Patent by Scholastic, and for each communication identify the individuals that were present and the substance of each communication.

(Dkt. # 45, Pg. ID 995.) Defendant responded to Plaintiff's request by asserting attorney-client privilege and work product confidentiality for those documents containing Siff's impressions and communications. Accordingly, Plaintiff filed the present motion to compel and seeks production of:

> (1) all communications between Scholastic and any attorney, including in-house counsel and Mr. Siff's firm, concerning the subject matter of the

> Stimpson opinion; and (2) all documents that discuss a communication between Scholastic and any attorney, concerning the subject matter of the Stimpson opinion, but that are not to or from Scholastic.

(Dkt. # 45, Pg. ID 993.) Plaintiff contends that Defendant's reliance on an opinion of counsel defense waives its right to claim privilege as to all attorney-client communications on the same subject matter as the opinion, except post-lawsuit communications with trial counsel.

## II. STANDARD

The scope of discovery available to parties in a civil action is outlined in Federal Rule of Civil Procedure 26. As a general matter, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). The attorney-client privilege and work product confidentiality are governed by the common law. *See* Fed. R. Ev. 501.

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 06-00253, 2015 WL 13649574, at *2 (N.D. Ohio Apr. 17, 2015) (quoting *Genentech, Inc. v. United States ITC*, 122 F.3d 1409, 1415 (Fed. Cir. 1997)); *see also Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) ("The attorney-client privilege protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client.") (quoting *In re Grand Jury Subpoena*, 886 F.2d 135, 137 (6th Cir.1989)). While the attorney-client privilege is narrowly construed to avoid

4

overly restricting discovery, its scope is determined in light of its purpose—to increase full and frank communication between an attorney and his client. *Id.* The privilege "protects only those communications necessary to obtain legal advice." *Id.* (quoting *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002)). The burden of establishing that the attorney-client privilege is applicable to particular communications rests with the party asserting the privilege. *United States v. Krug*, 379 F. App'x 473, 478 (6th Cir. 2010); *see also* Fed. R. Civ. P. 26(b)(5).

Federal Rule of Civil Procedure 26(b)(3) prohibits a party from seeking discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." This is known as the work product confidentiality doctrine and it extends to nontangible discovery as well. *See Hickman v. Taylor*, 329 U.S. 495 (1947). The work product confidentiality doctrine is "broader than the attorney-client privilege." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (quoting *United States v. Nobles*, 422 U.S. 225, 238, n.11 (1975)). "While the attorney-client privilege protects only confidential communications, the work product doctrine generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation." *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006) (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986)).

The work product confidentiality doctrine allows an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman*, 329 U.S. at 510. However, upon a showing of substantial need and inability to

5

otherwise obtain the discovery without material hardship, the "written or oral information transmitted to the attorney and recorded as conveyed by the client"—known as fact work product—is discoverable. *See In re Columbia*, 293 F.3d at 294. But, absent waiver, a party may not obtain "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories"—known as opinion work product. *Id.* "'The work-product [doctrine] protects the attorney's thought processes and legal recommendations' made in anticipation of litigation." *Communique Lab*, 2015 WL 13649574, at *3 (quoting *Genentech*, 122 F.3d at 1415).

Federal Rule of Civil Procedure 37 concerns a party's failure to make a disclosure or to cooperate in discovery. The Rule allows a party to "move for an order compelling disclosure or discovery" generally and also specifically allows a party to compel disclosure by another party who has failed "to make a disclosure required by Rule 26(a)." Fed. R. Civ. P. 37(a)(1) & (3)(B). "The scope of discovery is, of course, within the broad discretion of the trial court. An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Pearce v. Chrysler Grp., LLC Pension Plan*, 615 F. App'x 342, 350 (6th Cir. 2015) (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir.1998)).

### III. DISCUSSION

This court applies the law of the Federal Circuit when addressing discovery matters that implicate substantive patent law as this one does. *See In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1290 (Fed. Cir. 2016).

The Patent Act gives trial courts discretion to award enhanced damages in

"egregious cases of misconduct beyond typical [patent] infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, __U.S. __, 136 S. Ct. 1923, 1935 (2016); 35 U.S.C. § 284. These cases include instances of willful infringement. *Id.* at 1934. Willful infringement encompasses at minimum circumstances when the defendant "acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer.'" *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quoting *Halo*, 136 S. Ct. at 1930). The plaintiff must demonstrate willfulness by a preponderance of the evidence. *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1346 (Fed. Cir. 2016).

To defend against a claim of willfulness, a party may present evidence that it sought an opinion of counsel as to the merits of the infringement allegations and received exculpatory advice. *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1064 (Fed. Cir. 2003). This is known as the advice-of-counsel defense and it "aims to establish that due to reasonable reliance on advice from counsel, [the accused infringer's] continued accused activities were done in good faith." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1369 (Fed. Cir. 2007), abrogated on other grounds by *Halo*, 136 S. Ct. at 1923.

By voluntarily providing the opinion of counsel as part of its defense, the defendant waives its attorney-client privilege and the confidentiality of the related work product. *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006). But, "there is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal

advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Seagate*, 497 F.3d at 1372 (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349–50 (Fed. Cir. 2005)).

The Federal Circuit has addressed waiver in the context of defending against claims for willful patent infringement in two hallmark cases.

In *Echostar*, the court addressed the scope of the subject matter of the waiver of the attorney-client privilege and work product confidentiality when a defendant relies on an advice-of-counsel defense. First, the court concluded that "when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter," 448 F.3d at 1301, and this waiver extends to "communications with counsel other than in-house counsel." *Id.* at 1299. *Echostar* clarified that this broad waiver applies to only communications, not documents nor other materials tangible or intangible. *Id.* at 1301. Those materials are governed by the work product doctrine.

Second, *Echostar* addressed work product confidentiality and concluded that when a party invokes the advice-of-counsel defense, it waives the ability to assert work product confidentiality over "documents that embody a communication between the attorney and client concerning the subject matter of the case" *id.* at 1302, and "documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client." However, the latter category of documents remains subject to redaction of any "legal analysis that was not communicated" to the client. *Id.* at 1304. Additionally, the

8

protection of work product confidentiality still applies to "documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client." *Id.* at 1302.

The court summarized its overall holding:

> when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused. This waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client.

*Id.* at 1304.

A little over a year later, the Federal Circuit revisited waiver in the context of the advice-of-counsel defense. *See Seagate*, 497 F.3d at 1367. The Federal Circuit's en banc order in *Seagate* referenced *Echostar* and specifically asked the parties to address:

> Should a party's assertion of the advice of counsel defense to willful infringement extend waiver of the attorney-client privilege to communications with that party's trial counsel? *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed.Cir.2006).

*Id.* (citation in original). The *Seagate* opinion begins with a summary of the state of law and includes a discussion of *Echostar*:

> we held [in *Echostar*] that asserting the advice of counsel defense waives work product protection and the attorney-client privilege for all communications on the same subject matter, as well as any documents memorializing attorney-client communications. However, we held that waiver did not extend to work product that was not communicated to an accused infringer. *EchoStar did not consider waiver of the advice of*

9

*counsel defense as it relates to trial counsel.*

*Id.* at 1370 (internal citations omitted) (emphasis added). *Seagate* took the "opportunity to revisit [the Federal Circuit's] willfulness doctrine and to address whether waiver resulting from advice of counsel and work product defenses extend to trial counsel." *Id.* *Seagate* concluded "as a general proposition, that asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel [and] relying on opinion counsel's work product does not waive work product immunity with respect to trial counsel." *Id.* at 1374–76. The court reasoned that "the significantly different functions of trial counsel and opinion counsel advise against extending waiver to trial counsel." *Id.* at 1373.

Both *Seagate* and *Echostar* guide the court's analysis and opinion today. *Seagate* explicitly discussed *Echostar* and clarified that *Echostar* "did not consider waiver of the advice of counsel defense as it relates to trial counsel." *Id.* at 1370. Therefore, *Seagate's* holding pertains to trial counsel while *Echostar* governs waiver as to all other counsel, leaving open the question the parties ultimately present to this court: when is an attorney considered trial counsel, thus shielding his communications and work product from discovery even when his client asserts the advice-of-counsel defense?

Plaintiff asserts that Siff did not begin acting as Defendant's trial counsel until Plaintiff filed its complaint in this court. In contrast, Defendant contends that Siff began acting as its trial counsel as early as when it retained him to negotiate with Plaintiff

regarding Accused Device #1 and certainly when he represented Defendant in pre-suit discussions with Plaintiff concerning Accused Device #2.

In advancing their respective definitions of trial counsel, the parties rely on different parts of the *Seagate* opinion. Defendant directs the court to the following excerpt:

> Whereas opinion counsel serves to provide an objective assessment for making informed business decisions, trial counsel focuses on litigation strategy and evaluates the most successful manner of presenting a case to a judicial decision maker. And trial counsel is engaged in an adversarial process.

*Id.* at 1373. Defendant reasons that Siff engaged in the adversarial process on its behalf by negotiating with Plaintiff pre-suit. Defendant also argues that it retained Siff in anticipation of litigation and to develop trial strategy.

Plaintiff relies on a different part of *Seagate*:

> Because willful infringement in the main must find its basis in prelitigation conduct, communications of trial counsel have little, if any, relevance warranting their disclosure, and this further supports generally shielding trial counsel from the waiver stemming from an advice of counsel defense to willfulness. Here, the opinions of Seagate's opinion counsel, received after suit was commenced, appear to be of similarly marginal value . . . reliance on the opinions after litigation was commenced will likely be of little significance.

*Id.* at 1374. Because the focus of willfulness is pre-suit conduct, Plaintiff asserts that *Seagate'*s holding shields only the communications and work product of a trial attorney, i.e., the work generated by an attorney *after* a lawsuit has been filed.

Both parties also advance compelling policy or practical implication arguments in favor of their respective positions. Plaintiff stresses that pre-suit communications and

11

documents regarding infringement must be discoverable to guard against abuse of the advice-of-counsel defense. Absent discovery, a defendant could rely on exculpatory advice of opinion counsel to defend against willfulness all the while having been advised to the contrary by future trial counsel—known as the sword and shield problem. *See Regeneron Pharm., Inc. v. Merus*, 864 F.3d 1343, 1364 (Fed. Cir. 2017).

Defendant argues that discovery of trial counsel's pre-suit materials would stifle pre-suit negotiations and alternative dispute resolution discussions because counsel would be leery about having candid conversations of potential trial strategies with his client knowing that those conversations would be available to the plaintiff should litigation commence. Discovery into trial counsel's pre-suit communications and work product would give the plaintiff an unfair view into the defendant's litigation strategy.

Both parties present thoughtful research and analysis. Upon a review of the pertinent caselaw, the court concludes that a bright-line rule for waiver of trial counsel's pre-suit communications and documents is not appropriate. *See Fort James*, 412 F.3d at 1349 ("There is no bright line test for determining what constitutes the subject matter of a waiver.") The moment at which an attorney's role morphs from pre-suit advisory counsel into pre-trial strategy counsel is not easily defined by a distinct point in time and is better suited to a fact-intensive case-by-case analysis. After considering the "circumstances of the disclosure [sought here], the nature of the legal advice sought[,] and the prejudice to the parties of permitting or prohibiting further disclosures[,]" the court concludes that disclosure of Siff's pretrial communications and work product regarding infringement is appropriate. *Id.* at 1349-50.

12

### 1. Circumstances of the Disclosure

Plaintiff seeks disclosure of Siff's pre-suit communications and work product relating to subject matter of the Stimpson opinion. To understand the circumstances of Siff's communications and work, it is helpful to consider the function Siff served at the time of their drafting. In holding that waiver of privilege and confidentiality should not extend to trial counsel's work, *Seagate* concluded that trial counsel and opinion counsel serve "significantly different functions." 497 F.3d at 1373. Regarding the different functions of the two attorneys, *Seagate* reasoned that "trial counsel focuses on litigation strategy and evaluates the most successful manner of presenting a case to a judicial decision maker." *Id.* at 1373.

Prior to Plaintiff's filing of this patent infringement action, Siff was not "evaluat[ing] the most successful manner of presenting a case to a judicial decision maker." *Id.* Rather than being engaged in the "adversarial process" as Defendant suggests, Siff's negotiations on Defendant's behalf pre-suit sought to avoid the adversarial process and engage in voluntary alternative dispute resolution. *Id.* at 1373; *Compare Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (holding that the defendant did not waive its personal jurisdiction challenge by filing a motion to stay pending arbitration because said action indicates an intention "to seek alternate means of resolving a dispute and avoid litigation"). The relevant circumstances concerning the disclosure Plaintiff seeks—Siff's pre-suit communications and work—indicate that Siff's function was more analogous to that of advice or opinion counsel than trial counsel. Consequently, the circumstances of the disclosure weigh in favor of finding waiver of

privilege and confidentiality.

## 2. Nature of the Legal Advice Sought

In holding that waiver of privilege and confidentiality should not extend to trial counsel's work, *Seagate* also concluded that there is a "fundamental difference between the[] types of legal advice" trial counsel and opinion counsel provide to the client. 497 F.3d at 1373. Regarding the nature of the legal advice provided by each attorney, *Seagate* reasoned that, "defenses prepared by litigation counsel for a trial are not equivalent to the competent legal opinion of non-infringement or invalidity which qualify as due care before undertaking any potentially infringing activity." *Id.* (quoting *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1352 (Fed. Cir. 2001)) (brackets removed).

Siff was retained for a period from 2010–2011 and again from 2015–2016. During this time, Defendant was regularly communicating with Plaintiff regarding Plaintiff's '616 patent and accusations of infringement against Defendant. Following these discussions, Defendant would need to evaluate the various paths forward, identify the best course of action given the parties' discussions, and determine its next steps. Siff was the attorney who guided it through this process. The type of legal advice Siff would have provided to Defendant under these circumstances is more akin to "the competent legal opinion of non-infringement or invalidity" than "defenses prepared by litigation counsel" for trial.[1] *Id.*

---

[1] Interestingly, the question of the scope of the waiver of work product confidentiality

### 3. Prejudice

The potential prejudice to Plaintiff if the court were to prohibit the disclosure is greater than the potential prejudice to Defendant if the court were to permit the disclosure; especially given the conditions the court will impose on the disclosure. Two examples are helpful in illustrating this point—one based on each of the suggested lines drawn by the parties for when an attorney should be considered trial counsel.

Plaintiff asks this court to draw the line at the moment the plaintiff files suit, i.e., counsel becomes trial counsel, and thus his work is protected, only once a lawsuit has been initiated. Assuming the line were so drawn, imagine a company accused of willful infringement who obtains an exculpatory opinion from an outside counsel. Months later, the company retains an attorney because it anticipates litigation will commence soon and wishes to prepare. The newly retained attorney reviews the pertinent information and begins developing a defense strategy for trial. In the course of his work, he determines—in contrast to the outside counsel's opinion—that the defendant's actions may amount to infringement. But one week later, before the attorney can take any further action to advise the defendant, the plaintiff files suit. In that scenario, discovery of the attorney's opinion and related work product could unfairly damage the defendant's litigation strategy at trial with no apparent benefit. Counsel's opinion would provide very little evidence of bad faith or willful infringement given its context and

---

overlaps somewhat with the question of whether Defendant has sufficiently established the applicability of work product confidentiality in the first instance because both inquires concern to some degree whether the pertinent documents were prepared for litigation.

timing.

Defendant asks the court to draw the line at engagement with the accuser, i.e., counsel becomes trial counsel, and thus his work is protected, once he engages with the accuser on the defendant's behalf regarding the accused product.[2] Assuming the line were drawn in this way, imagine a company accused of willful infringement who seeks an opinion from an outside counsel. The attorney concludes that the company is likely infringing on the accuser's patent. The company, wishing to continue its current activities while also avoiding willfulness liability, determines it will hire this attorney as its trial counsel if or when litigation commences. Thus, the company has shielded the attorney's pre-suit adverse opinion from discovery.

The unique facts of this case are more closely related to the latter example than to the former and thus present a higher risk of the shield-and-sword problem than the potential to unfairly damage Defendant's trial strategy. As *Seagate* emphasized, willful infringement is based "in prelitigation conduct." *Id.* at 1374. It would be illogical to shield from discovery the very conduct that is dispositive of whether infringement was committed wilfully. *Id.* ("[A] willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct."). The waiver of privilege and the right to discovery of Siff's prelitigation conduct guards against the use of the advice-of-counsel defense as both a shield and sword—

---

[2] Defendant also seems to suggest trial counsel's privilege extends further and includes even interactions counsel has had with the accuser regarding other products related to the accused product.

16

"disclosing communications that support [the defendant's] position while simultaneously concealing communications that do not." *Fort James*, 412 F.3d at 1349. Communications regarding Siff's infringement opinion prior to suit may provide insight into whether Defendant's "continued accused activities were done in good faith," *Seagate*, 497 F.3d at 1369, or whether Defendant "acted despite a risk of infringement" that was known. *WesternGeco*, 837 F.3d at 1362. In contrast, protecting Siff's pretrial communications and work product as to infringement from discovery would result in "selective waiver of the privilege" and potentially "the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice." *EchoStar*, 448 F.3d at 1301.

Previously, Siff negotiated a settlement between Plaintiff and Defendant regarding the '616 patent. Through this process he would have become intimately aware of the details of the patent and the parties' various interpretations of the patent. He then served as counsel to Defendant when Plaintiff first accused Defendant of infringement activities with respect to Accused Device #2 until the time Plaintiff filed suit. Siff advised Plaintiff before and after it obtained an outside exculpatory opinion from Stimpson. Depending upon the advice Defendant received from Siff regarding Defendant's alleged infringement activities, it may or may not have been reasonable for Defendant to rely on Stimpson's exculpatory opinion. The court will grant Plaintiff's motion.

### 4. Conditions of Disclosure

The disclosure here remains subject to the limitations established in *Echostar*. As

one court in this district explained when confronted with similar facts:

> [T]he Federal Circuit has held that communications by counsel to the [alleged] infringer concerning the infringement, validity, or enforceability of a patent fall squarely within the scope of the privilege waiver. Documents that memorialize oral communications to the client [regarding those subjects] are discoverable as well.
>
> . . .
>
> Plainly, uncommunicated work product that does not memorialize a conversation between lawyer and client does not fall within the scope of a waiver recognized by the Federal Circuit and remains protected by the work-product privilege. In addition, communications with trial counsel that post-date the filing of the lawsuit—which in this case is October 30, 2006—most likely have little bearing on the question of willfulness or [Defendant's] reliance upon counsel's advice to shape its accused pre-suit conduct. Furthermore, confidential communications that do not relate to the invalidity, unenforceability, or non-infringement of the [] patent remain privileged.

*SPX Corp. v. Bartec USA, LLC*, 247 F.R.D. 516, 525–27 (E.D. Mich. 2008).

Additionally, the court is cognizant of Defendant's concerns, which are not meritless. Defendant must be permitted to protect its counsel's mental impressions "analyzing the law, facts, trial strategy and so forth" that are unrelated to infringement or were not disclosed to the client. *Echostar*, 448 F.3d at 1302. Likewise, fairness counsels that Defendant be permitted to protect "mental process work product" such as "plans, strategies, tactics, and impressions" of counsel, *Seagate*, 497 F. 3d at 1375, "prepared in anticipation of litigation or for trial," Fed. R. Civ. P. 26(b)(3), or impressions unrelated to the subject matter of the Stimpson opinion or not disclosed to the client. This court has discretion to regulate the discovery process and will allow Defendant to redact the pertinent communications and documents as necessary to guard these impressions, *see EchoStar*, 448 F.3d at 1304, keeping in mind that the relevant inquiry for willfulness

18

is whether Defendant received an adverse opinion—that Accused Device #2 infringed on Plaintiff's patent.³ Thereafter, the court will review the unredacted communications and documents *in camera* to ensure there is no "chicanery." *Seagate*, 497 F.3d at 1375.

On a final note, the court recognizes the novelty of the question presented here and concludes that Defendant should be afforded an opportunity to change course in light of this opinion and order, should it wish to do so. Defendant is not expected to have known Siff's communications and work product would be subjected to the waiver described herein by its reliance on Stimpson's opinion. Should Defendant wish to withdraw its advice-of-counsel defense and Stimpson's opinion, it may do so and it would thereby retract the resultant waiver.

## IV. CONCLUSION

Plaintiff accuses Defendant of willfully infringing on its '616 Patent. In response, Defendant submitted an exculpatory opinion as to infringement by outside counsel Stimpson. In doing so, Defendant waived its attorney-client privilege and work product confidentiality as to all other communications and documents given to Defendant on the same subject matter as established by *Echostar*. The court concludes that this waiver, while not extending to trial counsel's communications and work, extends to Siff's pre-suit communications and work here. Accordingly,

---

³ The court's order is limited to communications and work product concerning Accused Device #2. Siff's earlier communications and work regarding Accused Device #1 and the parties' related settlement are not at issue in this case and are not relevant to the court's willfulness inquiry.

For the reasons set forth above, IT IS ORDERED that Plaintiff's motion to compel (Dkt. # 45) is GRANTED subject to the process and limitations denoted in this order.

        s/Robert H. Cleland  
        ROBERT H. CLELAND  
        UNITED STATES DISTRICT JUDGE

Dated:   June 22, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 22, 2018, by electronic and/or ordinary mail.

        s/Lisa Wagner  
        Case Manager and Deputy Clerk  
        (810) 292-6522

s/Cleland/shared/judgesdesk/c2order/16-12936.GrantMTC.aju2.doc